Our next case for today is 413-0979, Brink v. Schneider et al. Mr. New for the appellant, you're here sir. Mr. Legner for the appellate. We're running a little late and I apologize to both counsel because of our morning call making us a little bit late. We're here now to run you to your seat. You may do so. You may please decourt counsel. Plaintiff Brink has been a non-union road building contractor which has done business with the state of Illinois and local government for over 30 years. Brink was a low bidder on two projects in 2010 and 2011. Unions filed protests and after that it was followed by an administrative hearing and the chief procurement officer adopted all the findings and recommendations of the hearing officer and suspended Brink from, and I quote, participating on any contracts awarded by or requiring approval or concurrence of IDOT for a period of two years. As outlined in my reply at page two, the Illinois Procurement Code, which is the enabling statute, simply does not apply to local roads and local contracts. And the breadth of that decision is too broad. The trial court recognized that IDOT's application of the statute appeared in many respects to place form over substance. But the trial court concluded it did not have the authority to substitute its judgment for that of the agency. The trial court was plain wrong. Courts interpret statutes de novo, not the administrative agency. Even assuming that there was some legitimate issue of fact, the administrative agency does not have absolute discretion to do whatever it wants. I suggest to the court that this is a case which demonstrates an agency running amok without restraint, with improper motive, contrived reasoning, which was arbitrary, capricious, and no trier of fact could have agreed with the decision. IDOT believes it has unfettered discretion, can ignore the enabling statute, ignore its own regulations, and make up rules as it goes along. IDOT's attitude can be best so known by the Assistant Attorney General's proclamations to the trial court. And those were, the CPO can decide who the state does business with. The state has discretion to decide who it will contract with, absent fraud. And most important, the state does not want to do business with Brink. That's exactly what was stated. If the court would look at the cross-appeal brief at page 4, I think the defendants basically admitted those statements as true. A review of the prolonged and seemingly never-ending proceedings at the TRO also demonstrates what lengths IDOT was willing to go to in order not to do business anymore with Brink. The defendants simply ignored the purpose of the Procurement Code in order to promote union work and eliminate non-union competition. The Procurement Code, in the section that we have before us, has one tenet it's looking for, and that is worker safeties. What happened is the defendants then made up a contrived issue that Brink was guilty of misrepresentation. This issue is not supported in the record by fact or in law since Brink was told how to proceed by IDOT officials. Counsel, is there anything in the record demonstrating who told him that? Yes, there is. Who was it? It was a Deputy Counsel Smith at the Counsel's Office for IDOT, and that is in the record. What was the nature of that conversation? Where did that occur? What brought the conversation about? What happened is R.L. Brink at one time had a laborer's program, and then the apprentice program, and then the federal government changed its standards, and they could no longer meet the requirement of having high-rise building training. So Brink, the President of Brink Construction, called IDOT and asked how to proceed, and he was specifically told that he should treat everybody as an operating engineer and simply pay the higher operating engineer's rate. And that's exactly what Brink did. Doesn't the plain meaning of the responsible bidder provision require that if the Federal Department of Labor has an approved and registered apprenticeship and training program that the type of work or craft your client identifies will be performed, and you have to actually perform the work or craft, these people must participate in a specific Department of Labor apprenticeship program? The statute does not say that. The Procurement Code 3022.6 was misapplied by the state. That section only requires bidders to participate in applicable apprentice programs. What do you think they mean by applicable? Well, there's no definition in the statute nor in the regulations. Doesn't it say applicable to each type of work or craft that the bidder will perform? That was not in the statute. That was specifically put in the regulations, and I suggest to the court that that expands the meaning of the statute, and it is a test which is not considered by the enabling legislation. Is this a regulation of the Department? It is a regulation of the Department. Why can't the Department put that in? How is that inconsistent with the language of the statute? Well, it's inconsistent with the language of the statute because the statute only requires an applicable program. No. It seems to me that this might be a clarification or an expansion of what the statute intended. It's not inconsistent with the statute. What's the difference? And aren't administrative agencies permitted to explain or expand upon what this means? So if they talk about training programs applicable, that they can define what that means? I don't believe that they defined in that item K what it was. What I believe they did is they expanded the statute to such a point that it was so overly broad as inconsistent with the intent of Section 3022 parenthesis. Well, in operation, didn't they just say the training program has to be limited to a particular type of work or craft, the equivalent being, I guess, that doctors or radiologists shouldn't be performing obstetrics or dermatology? Well, I'm not sure your analogy is correct, Your Honor. What I would suggest to you, that even assuming that the regulation in item K is acceptable, it's a two-part test. Part one is the type of work, and then it says, or the type of craft. Union contractors employ crafts, while non-union contractors designate the work to be performed. The work test is broader and addresses all the work that the employees do at the job site. Wasn't the issue in this case evidence that showed that Brink employed people who, along with other assigned duties, performed work normally associated with the laborer trade? There was evidence to that. And that they did not participate in the Federal Department of Labor Apprenticeship and Training Program for laborers? That is admitted also, Your Honor. And these two facts were not disclosed by Brink in the certification bid proposal? Let me address what was disclosed, what I believe. Brink represented none of its employees had taken a USDOL laborer training program. Brink never suggested in its representations that all subcontractors would do all the work, or what union considered to be laborer's work. The defendants assumed that all the work was going to be subcontracted incorrectly. But Brink correctly certified that its apprentice programs were applicable to the work to be performed. Under the reading that IDOT has, it would require every bidder, a non-union bidder, to identify the category of work for each portion of the work and then try to find a USDOL program that fits that work. And I suggest to the court that that is not the meaning of the statute. Is there a Federal Department of Labor Apprenticeship and Training Program for laborers? There is. And Brink employed people who performed work normally associated with laborers? It did, but also... What's the problem requiring Brink to have those people go through the Federal Apprenticeship and Training Program for laborers? Well, there's none available in the state of Illinois for non-union contractors. And as I said earlier, the reason it's not available is the Federal Department of Apprenticeship and Training changed the rules on how you can qualify. But I want to point out one thing to the court. The testimony on Brink's side at the hearing was that Brink had identified certified training programs for carpenters, operating engineers, and cement masons. The testimony also was that Brink trained all the employees in the aspects of the work, what unions describe as laborer's work. As part of these certified programs, the three that Brink had, Brink had a core curriculum for each one of the three programs. It was part of a certified program. That core curriculum trained people in what the unions described as laborer's work, meaning how to use shovels, how to bend, how to use rakes, how to use hand tools. The Brink met what was required in the procurement code. So, counsel, are you reading in some type of language in the statute that says that you can apply for some kind of waiver if you have an equivalent program? I mean, where does it say that? It doesn't. Your Honor, I don't believe it prohibits one from doing that. Well, the standard contract says if you've got laborers, you should go through the Federal Laborer Apprentice Program. Your argument is essentially saying, well, we provided one that's as good, so we don't have to do that. Isn't that what you're saying? I'm saying we provided the training and it's the same as in a laborer's apprentice program. Therefore, we can't just say, as they apparently did, well, that may be all well and good, but since it's a federal program, that's what we want you to be a participant in. That way, we can be assured of the purpose of this. As you say, it's for safety related that these people are properly trained. Without having to check, I mean, they might think, well, just to do it is firm. They certainly are going to want to train these people, but who's supposed to check this program and see whether it is the equivalent or adequate? Well, I want to do that. They say, instead, go through the federal program and then we know it's okay. Your Honor, I agree that that could be one interpretation, but if you look at the legislative intent, that was not the intent of the statute. Well, the administrative agency has given an awful lot of discretion to carry out the statute and to provide regulations to help do it. Now, having considered the language at question, it's hard to understand why this is such an inconsistency, as you put it, with the language they added in the regulation that provides that there shall be a particular kind of training program. Well, I don't understand why they couldn't have done that, why that's a problem. Why Brink couldn't have done the… Why the department couldn't have done it. Well, the department… To add the words to each type of work or craft seems to me just to be not going inconsistent with the statute, but clarifying the statute, a term that might otherwise be ambiguous. In the approved statute reads, apparently, in the approved apprenticeship and training program that the bidder will perform with his own forces to make it, in the approved apprenticeship and training program applicable to each type of work or craft. Why is that somehow violative of the statute? Because I believe that this court should find that what they did is they did not, they made this, the rule was so overly broad that it changed the meaning of the statute. This seems to be, arguably, narrowing the statute to make it, to say, no, when we say the statute says training program is applicable, we don't mean general, universal training programs, we mean applicable to that particular craft or trade. So if you've got a guy working as a laborer, what we mean, we took the statute to be training program applicable to laborers. How does that broaden it? Your Honor, what you're saying and what I got is saying that the only acceptable evidence that Brink could have had is that he participated in the laborer's program. And I believe that's clearly erroneous under the standards which courts review administrative rulings. Your Honor, also I believe that the adequate evidence standard was violated in that the code nor the regs define exactly what it is. So I think we need to look to 500-5065 of the procurement code, which requires suspension for cause. The cause are set forth in the regulations at 6.520, and only section D can possibly apply, which says making material false statement, representation, claim or report respecting the character, quantity, quality, or the cost of the work. I don't find any material false statement. Examples would be found in subsection A of 6.520, and the examples suggest active conduct. And that active conduct by the examples is fraud, embezzlement, theft, bribery, and collusion. None of those are present here. So there are limits on what discretion the procurement officer has. And I think the procurement officer just trumped up a misrepresentation charge and ignored the relative evidence. Counsel, what about with the Hancock project? Didn't we have brief workers engaged in the labor work that would be classified as for labor? Hancock would answer the federal aid project? It's referred to as Hancock in the briefs. It's one that would apply, so it's going to be something state-related. It wouldn't be a federal. Admittedly, some of Brink's workers did what labor unions describe as laborer's work. And in that contract, in the section K certification, Brink represented that the subs would be using laborers, but that they would not be using laborers. Can you explain that? I don't believe that's true. There was a protest, and Brink responded that they would not use laborers. At page 3 of my brief, I have exactly what was in those certifications. One certification, it says R.L. Brink. Is this on the Hancock? I'm not sure. One of these two certifications I'm reading to you was Hancock. R.L. Brink operators, subcontractors, stripers, iron workers. And the other one was plan sponsor, R.L. Brink, trades operators, cement masons, carpenters, subcontractors, stripers, operators, laborers, and cement masons. I don't see any misrepresentation there. Your time's up, Counselor.  Mr. Legner. Good afternoon, Your Honors. May it please the Court. Counsel. Brett Legner with the Attorney General's Office on behalf of defendants. Your Honors, this Court should affirm the Chief Procurement Officer's final administrative decision because it was not clearly erroneous that this Court should reverse the interlocutory injunctive relief granted by the Circuit Court. Turning to the administrative decision. The Chief Procurement Officer's decision was not clearly erroneous. Section 6.520 of the Administrative Regulations provides that a contractor may be barred or suspended due to acts indicating that it lacks integrity and honesty in the conduct of its business or the performance of its contracts. Section 30-22 subparagraph 6 of the Procurement Code enacted by the General Assembly provides that a bidder must present evidence that it participates in applicable apprenticeship and training programs that are approved by and registered with the United States Department of Labor. To present this evidence, to present the evidence required by Section 30-22.6 of the Procurement Code, a bidder must make the Item K certification as part of the contract terms and part of the bidding document terms. Item K states that it requires a bidder to state the trades to be used and that the bidder participates in an approved U.S. Department of Labor approved apprenticeship and training program for each of the trades to be used. Here, there are two state contracts in which Brink did not represent that they were going to use laborers, but the facts are undisputed that they did use laborers in the performance of both of those contracts. And it is also undisputed that they participated in no U.S. Department of Labor approved laborers apprenticeship program. That ends the inquiry. It is an easy case. It's done. The facts are undisputed that they said they do not use laborers, but that they did use laborers, and that they do not participate in an approved apprenticeship program. As if any more evidence was needed, and it's not, but there's more. On a federal contract in which they were doing substantively the same work, they represented that they used laborers. Why could they do that on the federal contract? Because there was no requirement under the federal contract that they participate in a Department of Labor approved apprenticeship program for laborers. Since that requirement wasn't there, they were actually honest on the federal contract and said, we're using laborers to do the same work on the same type of project, but just one led by the federal government instead of using state money. Additionally, Brink knew what laborer work was because, and as Justice Holder-White was pointing out, on one particular bid document they represented that their subcontractors are using laborers. It's not a mystery as to what laborer work is. Brink certainly knew what it was, and it represented on one contract that its subs were using laborers. Moreover, Brink used to participate in a laborer apprenticeship program. Again, this is not some mystery. This is an attempt by Brink to get around the requirement that it participate in this type of a program. To get around this requirement, it made misrepresentations on item K of the contract and bid documents. And the contract actually specified that item K, the representations you make in item K, are material representations to the contract. Therefore, when Brink lied on those certifications, it was making a material misrepresentation. That brings its conduct within the Administrative Regulations Section 6.520 and shows that it was not acting with honesty and integrity in the conduct of its business or the performance of its contracts. What is it that you say you're appealing? As the cross-appeal? Yes. The cross-appeal is the injunctive relief that required the state to execute the Quincy contract. That's not before us in this appeal, is it? Well, there's a cross-appeal. Well, you're cross-appealing, but I mean, what judgment is it that we're supposed to be reviewing? There's no extent judgment anymore, is there? Well, we're reviewing the final judgment, which, you know, and the final judgment in the case, you know, specifically, the case was finally wrapped up when the court affirmed the Administrative Decision on Administrative Review. But when the final judgment is entered, all the previous interlocutory orders are then properly brought before the court. So how is that interlocutory order properly before us? Well, because it was an order that was entered in this case, this court, when we had the interlocutory appeal the first time up on this case, and this court said in that decision that if public officials need guidance on the issues raised by this interlocutory appeal, then they can seek that when there is a final decision and bring it up as part of the appeal of the final decision. And I think that's consistent with the rule. So again, you can have a number of interlocutory decisions in a case, as you know, that may not be immediately appealable, but when there is a final decision and the case is finally wrapped up... But we don't review orders, we review judgments, and there's no judgment before us in which that order plays a role, is there? Well, I disagree. The court's jurisdiction, its plenary jurisdiction over a case, occurs as a general matter, with some exceptions, as a general matter when there is a judgment in the case. But when there is a judgment entered in the case, that gives the court jurisdiction to review any orders that had been entered. Insofar as they might affect the judgment.  These orders affected this judgment not at all. The issue before us is whether or not we should affirm the trial court's decision confirming the judgment of the administrative body. Isn't that correct? I think... None of those earlier orders, any of those interlocutory orders, have any bearing upon our assessment of the correctness of that ruling, which in turn, really reviewing the correctness of the administrative agency, aren't we? That is true, that the interlocutory injunction does not have an effect on the administrative review action. That is true. But, these are, I think to... Then aren't you just asking for an advisory opinion? No. And the reason for that is, in specific terms, in relation to the progress of this appeal, this appeal... I'm sorry, this case, this lower court case, the circuit court action, did not start as an administrative review action. It started as seeking injunction to enjoin the... Was an injunction entered? Yes. Was it appealed? It was. And, what happened? This court said that it was moot, it was not properly before the court, and that if the public officials wanted guidance on the issues raised by it, they could do so. Wasn't there some administrative proceeding going on as well? There was an administrative proceeding going on during that time. That is true. But the administrative proceeding concerned the... The administrative proceeding concerned... Was their administrative review... I'm sorry, their administrative hearing concerning the propriety of the suspension. When the action was first brought, it sought to enjoin the enforcement of the interim suspension. And that's what the injunctive relief was. The court did not... The circuit court did not enjoin the administrative hearing from going on. That was another part of the original complaint in this matter. That went on, and when that was completed, the case was... I guess the complaint... The action was amended to then include this administrative review of the administrative hearing. So that is part of the case. But another part of the case, another part of the cause of action, has always been the request for interlocutory relief. And that part of the case was wrapped up before the administrative review. That's true. And the final judgment that finished the issues concerned the administrative review. But there was already... The injunctive aspect had already gone to a final judgment. It just didn't wrap up the entire case with regard to all the parties. Perhaps, you know, it might have been appropriate for a 302A interlocutory appeal, something along those lines. But, you know, that language wasn't entered. And so when the court finally approved the administrative decision, it was wrapping up the entire case. And the entire case was started out as a claim for injunctive relief, and then in addition became an administrative review action was done. So then it's our theory that both aspects of this litigation, injunctive claim and the administrative review claim, are then reviewable by this court. Okay. Touching on the merits of the cross-appeal then briefly, since we've gone there. To the extent the court reaches the merits of that claim, and again, it's certainly our position that it's probably before the court right now, sovereign immunity prevents the court from ordering that the state enter into a contract with a particular party. And that, even if there were mootness concerns or anything like that here, that shows the public interest and the importance of this issue. The circuit court, in issuing the injunctive relief, required the Department of Transportation to enter into the Quincy contract with Brink. It enjoined, in the preliminary injunction, it enjoined the department from enforcing the interim suspension with regard to the Quincy contract, but the court also made it very clear when Brink moved to hold the Secretary of the Department of Transportation in contempt that the department was required to execute the Quincy contract. Courts do not have the authority to order the state to enter into a contract with a specific party. One, because that infringes on the discretion of the state to choose with whom it's going to contract, to choose whether to approve a contract under Section 7-203 of the Highway Code. Two, because generally a state cannot, the court cannot tell the state to contract with a particular party under the Brando Construction and the Hudgens v. Deans cases that we cited. And three, because their claim that they were entitled to a specific contract with the state was a present claim based on a contract, and that is barred by sovereign immunity under the State Building Venture Claim case. If your honors have no other questions on either the cross-appeal or the appeal, I'll rest on the briefs for the rest of it. Thank you very much. I see none. Thank you, counsel. Mr. New, any rebuttals there? I do. Okay. Thank you. First of all, to address one of the issues of counsel, defendants frames the issue as, does the circuit court have power to require the state to enter into a contract? What the real issue is, does the state have the ability to veto a contract that was already entered into between the state, between the city and R.L. Brink? The facts are what had happened is, first the contract was approved by IDOT, the bids were let, the specs were approved, the contract was signed. There was nothing left to do. With respect to two other issues, one would be ERISA preemption. I'd like to leave the court with two thoughts. Number one, the cases I cited, the procurement code mandates approved apprentice programs. Once mandated, every case says it is simply preempted. The second thought is that page 42 of my brief, there's a case which is not precedent to the court, it's a district court case of utility versus River Falls. However, the logic of that case fits the facts in this case so perfectly, I would ask that the court review that. The other issue is whether or not the agency violated the Administrative Procedure Act. The trial court found, at page 33 of my brief, that IDOT processed and handled complaints or protests in accordance with unpublished internal rules. Even the trial court found that there were rules that were not published in accordance with the APA. And that is the basis of the protests. Brink had no idea how to handle a protest that was received because there was no regulation visible. It was a hidden regulation. And the Smith, Klein, Beecham case covers that. And the Supreme Court was concerned with an agency interpretation of ambiguous regulations, which I think what happened here. And that court was concerned that a practice of deferring to an agency interpretation of its own ambiguous regulations has the advantage for the agency, but creates great risk so that the agencies will promulgate vague and open-ended regulations so they can interpret them as they see fit. And that's what happened here. They interpreted them the way they wanted, and that's what resulted in the suspension. Okay, thank you, counsel. We'll take a stand. My name is Arthur. I'll be in recess until 12 o'clock.